UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL CAMBRIA, individually and on behalf of all other persons similarly situated,

                Plaintiffs,

v.

BILL'S TOWING SERVICE, INC. and BRUCE GOLDBLATT, jointly and severally,

                Defendants.

No.: _____

COLLECTIVE ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Michael Cambria ("Plaintiff"), on behalf of himself, individually, and all others similarly situated, hereby alleges as follows:

NATURE OF THE ACTION

1. This is a civil action for damages based upon willful violations that the Defendants Bill's Towing Service, Inc. ("Bill's Towing") and Bruce Goldblatt ("Goldblatt"), individually, (both collectively as "Defendants") committed against Plaintiff and other similarly situated employees by (i) failing to pay overtime wages in accordance with Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.;* (ii) failing to pay overtime wages in accordance with New York Labor Law ("NYLL") § 650 *et seq.*, and the N.Y. Comp. Codes R. and Regs. ("NYCRR") tit. 12 § 142-2.2; (iii) failing to provide wage statements containing specific categories of accurate information on each payday as required by NYLL 195.3; and (iv) failing to provide a notice of pay rate and payday as required by NYLL 195.1.

2. Plaintiff worked for Defendants as a tow truck driver from July 2015 through on or about September 15, 2017. Throughout that time, Defendants failed to pay Plaintiff the wages lawfully due to him under the FLSA, NYLL and NYCRR and committed other wage and hour violations.

3. Defendants agreed to pay Plaintiff a fixed weekly salary for a fixed 50-hour workweek. However, Defendants also required Plaintiff to work "off the clock" before and after his scheduled shifts, and on nights and weekends, without compensating him for his time. In some weeks, Defendants required Plaintiff to work up to 70 hours "off the clock" without any additional hourly or overtime compensation. Each week or virtually each week, Plaintiff worked in excess of 40 hours, but Defendants failed to compensate Plaintiff at one and one-half times his regular rate of pay for all hours that he worked in excess of 40.

4. Moreover, Defendants violated the NYLL by failing to provide Plaintiff with accurate wage statements on each payday and failing to provide a notice of pay rate and payday.

5. Defendants' violations of the NYLL and FLSA were willful. In fact, Plaintiff complained to Defendants on multiple occasions that he was not being compensated for overtime hours, but they refused to change their pay practices.

6. Defendants paid and treated similarly situated tow truck drivers in the same manner.

7. Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA (the "FLSA Plaintiffs").

8. Plaintiff brings claims under the NYLL on behalf of himself, individually, and on behalf of any FLSA Plaintiffs who opt in to this action.

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367 because they are so related to the claims in this action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the state of South Carolina. Defendant is a New York corporation with its principal place of business in New York. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

11. Venue is proper in this District under 28 U.S.C. §§1391(b)(1) and (2) because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein took place in this District.

## THE PARTIES

12. Defendant Bill's Towing is a New York business corporation with its principal place of business at 13 Midland Avenue, Hicksville, New York. Defendant Bill's Towing provides towing and other automotive services.

13. Defendant Goldblatt is an adult male residing in Old Bethpage, New York. Upon information and belief, Defendant Goldblatt is the sole owner and operator of Bill's Towing.

14. At all relevant times herein, Defendant Goldblatt controlled the day-to-day operations of Bill's Towing, had the power to and did in fact hire and fire employees, supervised and controlled employees' daily activities, determined the rate and method of payment of employees' wages, and had responsibility for maintaining employment records. Defendant Goldblatt personally hired Plaintiff, determined his compensation, oversaw his work schedule and signed his paychecks.

15. At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and the NYLL. Upon information and belief, Defendant Bill's Towing had an annual gross volume of revenue in excess of $500,000 and was engaged in interstate commerce within the meaning of the FLSA at all relevant times. Among other things, Defendants utilized trucks to conduct their business that came from out-of-state and were made with out-of-state parts.

16. At all relevant times herein, Defendant Bill's Towing and Defendant Goldblatt operated in concert and together in a common enterprise and through related activities, so that the actions of one may be imputed to the other, and/or they operate as joint employers within the meaning of the FLSA, and/or were otherwise legally responsible for the matters alleged in this Complaint and proximately caused Plaintiff and the FLSA Plaintiffs to be subject to the unlawful pay practices described in this Complaint.

17. Plaintiff Michael Cambria is an adult male and resident and citizen of Bluffton, South Carolina. From approximately July 2015 through September 15, 2017, Plaintiff was employed by Defendants as a tow truck driver in New York. Throughout that time, Plaintiff was an "employee" entitled to protection as defined by the FLSA, NYLL, and the NYCRR.

## STATEMENT OF FACTS

18. Defendants hired Plaintiff as a tow truck driver in or around July 2015. Throughout his employment, Plaintiff's duties included driving Defendants' commercial tow trucks, towing vehicles and trailers, providing roadside assistance such as vehicle lockouts and tire changes, and placing and removing boot devices on vehicles for the Nassau County Boot & Tow Program. Plaintiff was also responsible for maintaining Defendants' equipment, cleaning and washing trucks, keeping inventory of cars in the storage yard, and other duties.

Plaintiff's Fixed Salary for 50-Hour Workweek

19. Throughout the relevant time period, Defendants normal business hours of operations were Monday through Friday, 8 a.m. to 6 p.m. Defendants hired Plaintiff to work this 50-hour workweek and promised him a fixed weekly salary for the 50 hours.

20. Specifically, in July 2015, Defendant Goldblatt informed Plaintiff that his weekly salary would be a fixed $900 for the fixed 50-hour workweek (Monday through Friday, 8 a.m. to 6 p.m. Defendant Goldblatt also told Plaintiff that his fixed weekly salary would increase if he passed the Class A Commercial Driver License test. Plaintiff accepted the fixed salary for 50-hour workweek. At the time, he was unaware that he would be required to work night and weekend shifts or after-hours.

21. From the beginning of his employment through approximately November 6, 2015. Defendants paid Plaintiff a fixed $900 salary for the fixed 50-hour workweek.

22. Beginning on or about November 7, 2015, Defendants increased Plaintiff's weekly salary to $1050 for the 50-hour workweek. Plaintiff received this raise because he obtained a Class A Commercial Driver's License.

23. Throughout Plaintiff's employment, Defendants paid Plaintiff a portion of his weekly salary by check and the balance in cash.

24. Defendants never paid Plaintiff an overtime premium for hours worked over 40.

<u>Plaintiff's Night and Weekend Shifts</u>

25. Defendants provide 24-hour towing and roadside assistance, but have no drivers or dispatchers dedicated to night and weekend shifts.

26. Defendants schedule their employees to work during standard business hours (Monday to Friday, 8 a.m. to 6 p.m.) and then require them to work as a "primary" and "back up" driver on night and weekend shifts.

27. The primary driver is "on call" for the entire night or weekend shift. The back-up driver must be available in the event the primary driver cannot timely respond to an incident, if for example the primary driver is attending to another job.

28. Plaintiff regularly worked as the primary driver for at least one night shift per week and at least one weekend shift per month, sometimes working up to 120 hours per week.

29. The night shift was a 14-hour shift that started 6 p.m. each day and ended at 8 a.m. the following morning, Mondays through Thursdays. The weekend shift was 62 hours long, from Friday at 6 p.m. to Monday at 8 a.m.

30. When assigned as the primary driver for night or weekend shifts, Plaintiff was required to be "on duty" at all times. He was required to be available to answer calls and pages throughout the shift and to respond on-site to incidents or jobs in under thirty minutes, unless he was out on another job already.

31. The primary driver also had to remain with Defendants' flatbed tow truck throughout the night or weekend shift, so he could respond promptly to jobs. Plaintiff had to

leave his personal vehicle at the towing yard and drive the tow truck home when assigned as the primary driver for a night or weekend shift. Plaintiff had to safeguard and stay within close proximity of the tow truck during these shifts.

32. During night and weekend shifts as the primary driver, Plaintiff was also required to perform duties of a dispatcher, in addition to driving the truck and responding to jobs and incidents. He received calls and pages about potential jobs from multiple sources, including (i) Defendants' answering service, which connected Plaintiff with potential customers who called for service after-hours; (ii) third-party call centers for insurance companies and other organizations; (iii) Defendants' "house" clients, such as the Nassau County Police and Nassau County Boot & Tow Program, and prior customers who contacted Plaintiff directly; and (iv) Defendant Goldblatt, who contacted Plaintiff about specific jobs for customers, friends and family.

33. Plaintiff spent significant time fielding phone calls and pages during night and weekend shifts. Plaintiff had to respond to calls and pages as soon as possible.

34. Plaintiff often had to negotiate with insurance companies and other customers who called for price quotes. Sometimes, Plaintiff had multiple calls with the same party before a price quote was accepted. At times, Plaintiff waited an hour or longer to find out that a price was accepted and the job was booked. Other times, Plaintiff waited and never heard back. Plaintiff spent significant taking calls and waiting for responses that did not result in a job.

35. For customers paying by credit card, Plaintiff processed payment before beginning the job. He took down customers' credit card information over the phone and then called the credit card company for payment authorization.

36. Sometimes, Plaintiff received calls for a job that required a larger towing vehicle during a night or weekend shift. In those situations, Plaintiff had to drive Defendants' flatbed tow truck to the towing yard, drive Defendants' tractor trailer or another towing vehicle to perform the job, return that vehicle to the towing yard, and drive the flatbed tow truck home.

37. During night and weekend shifts, Plaintiff could not effectively or reliably use his time for his own purposes. He had no way of predicting when he would receive a call for a job, how many calls he would need to field, or how long a job would take. He therefore was unable to make personal plans or attend to personal matters during those shifts.

38. Plaintiff's ability to engage in personal care, sleep and other activities was severely restricted during night and weekend shifts. He was expected to respond almost immediately to calls and pages. He had to keep his personal cell phone and company pager close at all times, even when sleeping or showering. Plaintiff rarely, if ever, got more than a few hours of interrupted sleep while he was "on call."

39. Plaintiff 's night and weekend shifts were entirely "off the clock." Defendants did not track the time Plaintiff spent working. Plaintiff was not paid "straight time" or overtime wages for these hours.

After-Hours Work

40. On days where Plaintiff was not scheduled for nights and weekend shifts, Defendants often required him to work before or after his typical schedule. Defendants sometimes scheduled Plaintiff to do an early job, starting one to three hours before his usual 8 a.m. start time. On other occasions, Defendant Goldblatt called Plaintiff before his shift began to instruct him to perform an early job. On average, Plaintiff was required to perform an early job approximately once every other week.

41.     Plaintiff was often required to work later than 6 p.m. a few days per week, in addition to the days he was scheduled for a night or weekend shift.  Sometimes, jobs ran up to two hours past the scheduled end of his day.  Other times, after Plaintiff went home for the day, Defendants called Plaintiff to assign him a job, which often took 3-4 hours or longer.

42.     The hours that Plaintiff worked before and after his normal shifts were entirely "off the clock."  Defendants did not track the time Plaintiff spent working.  Plaintiff was not paid "straight time" or overtime wages for these hours.

43.     Plaintiff's relationships with his friends, family and girlfriend suffered because he was frequently called away from personal commitments to work before and after his normal shift.  On many occasions, Plaintiff arrived home from his regular shift to have dinner with his girlfriend, only to be called away for another job.

Wage and Hour Violations

44.     The time Plaintiff spent working before and after hours, and on night and weekend shifts, was compensable working time under the FLSA and NYLL. This includes not only the time the Plaintiff spent performing jobs, driving and fielding phone calls, but also the time he spent "on call."

45.     Plaintiff was never paid his regular hourly rate, or any hourly rate, for after-hours work or night and weekend shifts.  Defendants never paid Plaintiff overtime for hours worked in excess of 40 in a workweek.  Rather, Plaintiff only received his weekly salary, which represented straight-time compensation for 50 hours, and in some cases, commissions for certain jobs worked after hours or on night and weekend shifts.

46.     As an example, in the payroll week beginning Saturday, September 2, 2017, Plaintiff worked 56 hours but did not receive overtime pay.  He worked his typical 50-hour

schedule (Monday to Friday, 8 a.m. to 6 p.m.), plus an additional 6 hours (the first part of a weekend shift) on Friday September 8, 2017 from 6 pm to midnight. However, Defendants paid Plaintiff only his fixed weekly salary ($1050 for 50 hours). Defendants failed to pay Plaintiff any hourly compensation for the additional six hours of work and failed to pay Plaintiff overtime for hours worked over 40.

47. In the following payroll week, beginning Saturday, September 9, 2017, Plaintiff worked 106 hours but did not receive overtime pay. He worked his typical 50 hour schedule, plus an additional 56 hours (part of the weekend shift) from Saturday, September 9, 2017 at 12 a.m. through Monday September 11, 2017 at 8 a.m. However, Defendants paid Plaintiff only his fixed weekly salary ($1050 for 50 hours) plus $410 in commissions. Defendants failed to pay Plaintiff any hourly compensation for the additional 56 hours of work and failed to pay Plaintiff overtime for hours worked over 40.

48. As yet another example, in the payroll week beginning Saturday, May 27, 2017, Plaintiff worked at least 70 hours but did not receive overtime pay. He worked his typical 50-hour schedule, plus (i) a 14-hour night shift from Monday May 29, 2017 at 6 p.m. to Tuesday May 30, 2017 at 8 a.m., and (ii) an additional 6 hours (the first part of a weekend shift) on Friday June 2, 2017 from 6 p.m. to midnight. However, Defendants paid Plaintiff only his fixed weekly salary ($1050 for 50 hours), plus $70 in commissions. Defendants failed to pay Plaintiff any hourly compensation for the additional 20 hours of work and failed to pay Plaintiff overtime for hours worked over 40.

49. Defendants did not track or record the hours that Plaintiff worked. Defendants never asked Plaintiff to keep a timesheet, punch a time clock, or otherwise record his hours.

Defendants had no written policies or procedures regarding wages, hours, timekeeping or overtime. Defendants also had no timekeeping system for employees to track their time.

50. Defendants' pay practices described above were not unique to Plaintiff, but common and applied to all FLSA Plaintiffs. From speaking with coworkers and personal observations, Plaintiff knows that other tow truck drivers regularly (i) worked Defendants' standard 50-hour schedule, but also were required to work afterhours and additional night and weekend shifts as primary and backup drivers, and (ii) were paid a flat weekly salary for 50 hours without overtime, plus commissions for certain jobs worked on night and weekend shifts.

51. Defendants knew that the foregoing acts violated the FLSA and NYLL, and would economically injure Plaintiff and the FLSA Plaintiffs.

52. Defendants committed the foregoing acts against Plaintiff and the FLSA Plaintiffs knowingly, intentionally and willfully.

<u>Wage Notice and Wage Statement Violations</u>

53. Defendants were required to provide Plaintiff with a Notice of Payrate and Payday under NYLL § 195.1.

54. Defendants failed to provide the required Notice when Plaintiff was hired or any time during his employment.

55. Defendants also were required to provide Plaintiff with accurate wage statements under NYLL § 195.3. Such wage statements must include, among other things, regular and overtime hours worked, hourly and overtime rates of pay, and gross and net wages for the week.

56. On each occasion that Defendants paid Plaintiff, Defendants failed to provide Plaintiff with a wage statement that accurately listed his regular and overtime hours worked, hourly and overtime rates of pay, or his gross and net wages for the week. None of the wage

statements Plaintiff received listed his regular hours, overtime hours, regular rate of pay or overtime rate of pay. Moreover, the wage statements did not accurately reflect his gross and net wages for the week. Defendants paid Plaintiff partly in cash each week, which was never included in his wage statements.

57. Upon information and belief, Defendants failed to provide wage notices and accurate wage statements to the FLSA Plaintiffs as well.

58. Defendants knew that the foregoing acts violated the NYLL, and would economically injure Plaintiff and the FLSA Plaintiffs.

59. Defendants committed the foregoing acts against Plaintiff and the FLSA Plaintiffs knowingly, intentionally and willfully.

## COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually on his own behalf, as well as on behalf of those in the following collective:

> Current and former tow truck driver employees, or those who worked in similar positions, who at any time during the applicable FLSA limitations period, performed any work for Bill's Towing Service, Inc. and who consent to file a claim to recover damages for overtime compensation that is legally due to them ("FLSA Plaintiffs").

61. Defendants treated Plaintiff and the FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs (1) performed similar tasks, as described in the "Statement of Facts" section above; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; (5) were required to work "off the clock" without compensation; (6) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty; and (7) were not provided with wage notices or accurate wage statements as required by NYLL.

62. At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

63. Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty in violation of the FLSA.

FIRST CAUSE OF ACTION
*Unpaid Overtime under the FLSA*

64. Plaintiff, on behalf of himself and the FLSA Plaintiffs, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65. Defendants employed Plaintiff and the FLSA Plaintiffs within the meaning of the FLSA.

66. Plaintiff and the FLSA Plaintiffs are or were "employees" within the meaning of the FLSA, and Defendants and were a covered "employer" within the meaning of the FLSA.

67. Under 29 U.S.C. § 207, Defendants were required to pay Plaintiff and the FLSA Plaintiffs at one and a half times their regular rate of pay for all hours worked in excess of 40 each workweek, including while on call.

68. At all relevant times, Plaintiff and the FLSA Plaintiffs consistently worked in excess of forty hours per week, including time spent "on call" on night and weekend shifts which is compensable time under the FLSA.

69. At all relevant times, Defendants willfully failed and refused to compensate Plaintiff and the FLSA Plaintiffs at one and a half times their regular rate of pay for all hours

worked in excess of 40 each workweek.

70. Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Plaintiffs overtime pay in violation of the FLSA. Indeed, Defendants knew or should have known that Plaintiff and the FLSA Plaintiffs were entitled to overtime compensation but refused to pay such overtime compensation to them.

71. Plaintiff and FLSA Plaintiffs seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

72. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

SECOND CAUSE OF ACTION
*Unpaid Overtime Under the NYLL and NYCRR*

73. Plaintiff, on behalf of himself and any FLSA Plaintiff that opts into this action, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. Under NYLL § 160 and 12 NYCRR § 142-2.2, Defendants were required to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hour worked in excess of 40, including time spent "on call" on night and weekend shifts.

75. At all relevant times, Plaintiff and any FLSA Plaintiffs who opt in to this action consistently worked in excess of forty hours per week, including time spent "on call" on night and weekend shifts which is compensable time under the FLSA.

76. At all relevant times, Defendants willfully failed and refused to compensate Plaintiff and any FLSA Plaintiffs who opt in to this action at one and a half times their regular rate of pay for all hours worked in excess of 40 each workweek.

77. Defendants willfully, regularly and repeatedly failed to pay Plaintiff and any FLSA Plaintiffs who opt in to this action overtime pay in violation of the NYLL. Indeed, Defendants knew or should have known that Plaintiff and the FLSA Plaintiffs were entitled to overtime compensation but refused to pay such overtime compensation to them.

78. In failing to compensate Plaintiff and the FLSA Plaintiffs for all compensable hours worked, Defendants violated the NYLL and the regulations thereunder, 12 NYCRR §142-2.2.

79. Due to Defendants' NYLL violations, Plaintiff and any FLSA Plaintiff who opts in to this action are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

THIRD CAUSE OF ACTION
*Failure to Provide Wage Notice under NYLL § 195.1*

80. Plaintiff, on behalf of himself and any FLSA Plaintiff that opts into this action, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. Defendants have willfully failed to supply Plaintiff and the FLSA Plaintiffs with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a).

82. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts in to this action, in the amount of $50.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
*Failure to Provide Accurate Wage Statements under NYLL § 195.3*

83. Plaintiff, on behalf of himself and any FLSA Plaintiff that opts into this action, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. NYLL § 195.3 requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

85. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff, and any FLSA Plaintiff who opts in to this action, are employees within the meaning of the NYLL and the NYCRR.

86. As also described above, Defendants, on each payday, failed to furnish Plaintiff, and any FLSA Plaintiff who opts in to this action, with accurate wage statements containing the criteria required under the NYLL.

87. Defendants' failure to provide accurate wage statements was a willful violation of NYLL § 195.3.

88. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts in to this action, in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Plaintiffs, respectfully request this Court grant the following relief:

a. Designation of this action as a collective action on behalf of FLSA Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant

    to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and tolling the statute of limitations;

b.  Designation of Plaintiff as Representative of the FLSA Plaintiffs;

c.  An award of damages for unpaid overtime pay, including, but not limited to, for "off the clock work," under the FLSA and NYLL;

d.  An award for failing to provide the NYLL § 195.1 Notice;

e.  An award for failing to provide accurate and complete NYLL § 195.3 Wage Statements;

f.  An award of liquidated damages as a result of Defendants' NYLL violations;

g.  An award of liquidated damages as a result of Defendants' willful FLSA violations;

h.  An award of pre-judgment and post-judgment interest;

i.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

j.  Such other and further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      August 24, 2020

           KAUFMAN LAW FIRM PLLC

           s/ Meredith L. Kaufman
           Meredith L. Kaufman
           250 W. 16th St., 2G
           New York, NY 10011
           Tel: 646.469.9180
           meredith@kaufmanlawnyc.com

           *Attorneys for Plaintiff and proposed FLSA Plaintiffs*