

Kaufman Law Firm PLLC
www.kaufmanlawnyc.com

Meredith L. Kaufman
+1 646 469 9180
meredith@kaufmanlawnyc.com

April 1, 2021

**VIA ECF**

The Honorable Steven J. Tiscione
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

**Re: Cambria v. Bill's Towing Service, Inc., et al.; EDNY 20-cv-03886 (RPK)(ST)**

Dear Magistrate Judge Tiscione:

This joint letter brief is summitted on behalf of Plaintiff Michael Cambria and Defendants Bill's Towing Service, Inc. and Bruce Goldblatt (collectively, the "Parties"). Pursuant to Your Honor's February 28, 2021 order, the Parties seek approval of the executed Settlement Agreement, attached as Exhibit A, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

I.   Executive Summary

This is an action for wage and hour violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff was employed by Defendants Bill's Towing Service, Inc. and Bruce Goldblatt as a tow truck driver from July 2015 through September 15, 2017. As set forth in the Complaint, Plaintiff alleged that Defendants failed to pay him overtime and failed to provide wage notices and wage statements as required by law. He estimates his total backpay to be $125,000, plus liquidated damages, statutory penalties, interest and attorneys' fees.

Defendants dispute Plaintiff's allegations and contend that his actual damages are lower than his calculations. Defendants have claimed that Plaintiff worked fewer hours than alleged and/or that his damages should be calculated under the Fluctuating Workweek method.

At mediation, the Parties agreed to resolve Plaintiff's claims for $125,000. This amount will be paid over six months, with Plaintiff receiving $83,333.33 and his counsel receiving $41,666.67 (i.e., one-third of the settlement) in fees and expenses. The Settlement Agreement satisfies the Second Circuit's decision in *Cheeks* in every respect, and the parties therefore respectfully request that the Court approve the settlement.

The Honorable Steven J. Tiscione
April 1, 2021
Page 2

II.     Factual and Procedural Background

    A.      Summary of Plaintiff's Claims

Plaintiff alleges that Defendants hired him to work as a tow truck driver on fixed salary for a fixed 50-hour workweek (Monday-Friday, 8 a.m. to 6 p.m.), which covered Defendants' standard business hours. His salary was initially $900, and increased to $1050 when he passed the Class A Commercial Driver's License exam.

Plaintiff alleges that Defendants required him to work exhaustive hours beyond his 50-hour schedule and never paid him overtime. In addition to the 50-hour schedule, Plaintiff typically worked as the "primary driver" for at least one 14-hour night shift per week (6 p.m. – 8 a.m.), and at least one 62 hour weekend shift per month (Friday, 6 p.m. – Monday 8 a.m.). Plaintiff asserts that he was "on call" for the duration of each night and weekend shift. Thus, when he was not driving or attending to calls, Plaintiff was "engaged to wait" and the full night and weekend shifts are compensable.

Plaintiff also alleges that Defendants regularly required him to perform additional jobs on his "off" nights and weekends, when he was not scheduled as the primary driver, without overtime. Because Plaintiff was Defendants' only driver with a Class A Commercial Driver's License, he was called for any jobs that required a tractor trailer or larger tow truck, even when another driver was scheduled to work. Each additional job added one to four hours to Plaintiff's workweek.

Plaintiff asserts that Defendants never provided him with overtime pay, or any hourly wages, for his night shifts, weekend shifts and additional off-the-clock work. Plaintiff received modest commissions for some of the jobs he completed, but was never compensated for thousands of hours of work. Plaintiff's average regular rate was $22.50 (ranging from $18.00 to $35.40). His weekly salary was intended to cover 50 hours, so he is due halftime for the ten overtime hours he worked as part of his regular schedule each week. He is also due overtime for his night and weekend shifts and off-hours jobs, which ranged anywhere up to 80 hours per week. Plaintiff's backpay damages are approximately $125,000, plus liquidated damages, interest running from 2015, statutory penalties for wage notice and wage statement violations, and attorneys' fees.

    A.      Summary of Defendants' Defenses

Defendants have claimed that Plaintiff agreed to and was paid a fixed salary of $696.73 for a 50-hour workweek. Thus, he would only be owed overtime for hours worked over 50 in a week. Or in the alternative, they argue that his salary was intended to cover all hours worked and damages should be calculated using the fluctuating workweek method, which would mean Plaintiff is only owed halftime.

Defendants also claim that Plaintiff has significantly overstated his hours worked. Defendants assert that Plaintiff typically worked 55 hours a week and one weekend shift of about 10 hours per month, and that his "waiting time" on night and weekend shifts is not compensable because he was free to use that time for himself. Thus, Defendants claim the alleged overtime owed would be about $16,400.00.

The Honorable Steven J. Tiscione
April 1, 2021
Page 3

### B. Settlement Negotiation and Terms

Prior to initiating this action, Plaintiff filed a complaint against Defendants with the New York Department of Labor ("NYDOL"). The Parties attended a mediation with the NYDOL, where the Parties agreed to a settlement of $25,000. However, the same day, Plaintiff contacted the NYDOL and advised that he did not agree with the amount and retained counsel. On January 27, 2020, Plaintiff's counsel sent a six page demand letter to Defendants, detailing Plaintiff's factual allegations and legal arguments. The parties, through counsel, engaged in settlement discussions but were unable to reach a resolution. Accordingly, Plaintiff filed this action on August 24, 2020.

On December 1, 2020, the Court referred this matter to mediation. In advance of the mediation, the Parties exchanged Phase I discovery which included documents and information regarding Plaintiff's night and weekend schedules, records of certain jobs completed on nights and weekends, and Plaintiff's compensation. On February 17, 2021, the Parties attended a mediation session with Raymond Nardo. After meeting with both sides multiple times, Mr. Nardo made a mediator's proposal for a settlement of $125,000, which all Parties accepted.

Under the settlement, Plaintiff will be receiving $83,333.33, with the remaining $41,666.67 being paid to his counsel, Kaufman Law Firm PLLC, for attorneys' fees and expenses. The $41,666.67 represents one-third of the total settlement. Due to financial constraints, Defendants will be paying the settlement in six equal installments of $20,833.33. Defendants have provided Confessions of Judgment, for 130% of any unpaid installments, which Plaintiff may file with the Court if Defendants are in default.

### III. The Settlement Agreement is Fair and Reasonable

A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012). In this case, all of these factors support approval of the settlement.

### A. Case Complexity, Expense and Likely Duration of Litigation

Litigation of this case through trial would be costly and time-consuming. The parties do not agree on the basic facts, particularly how many hours Plaintiff worked. Additionally, the case involves complex legal issues, including whether Plaintiff was "engaged to wait" or "waiting to be engaged" on his assigned night and weekend shifts, and whether the fluctuating workweek method of damages should be applied. The anticipated time, cost and complexity of litigating the case through trial favor approving the settlement. See *Marshall v. Deutsche Post DHL*, No. 13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

The Honorable Steven J. Tiscione
April 1, 2021
Page 4

      B.      Stage of Proceedings

The Parties completed Phase I discovery prior to mediation, which included documents and information related to Plaintiff's hours worked and compensation received. Although formal discovery is incomplete, the parties exchanged meaningful information in Phase I, allowing the parties to adequately value the strengths and weaknesses of their respective claims and defenses. This favors approving the settlement. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at *8 (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); *Hall v. Prosource Techs., LLC, No.* 14-cv-2502 (SIL), 2016 US. Dist. Lexis 53791, at *39 (E.D.N.Y. April 11, 2016) (approving settlement where informal discovery was exchanged sufficient enough the parties had "adequate knowledge of the strengths and weaknesses of their respective claims and defenses").

      C.      Risks of Establishing Liability and Damages

The settlement will allow Plaintiff to avoid litigation risk. The bulk of Plaintiff's damages are based on unpaid overtime, which includes his night and weekend shifts as the Primary Driver and other jobs performed after-hours. Defendants sharply disagree as to the number of hours Plaintiff worked, whether "waiting time" is compensable, and how his damages should be calculated – all of which create risk for Plaintiff's claims.

First, the Parties disagree about whether Plaintiff's night and weekend shifts are fully compensable, or whether Defendants are only liable for the time Plaintiff spent working jobs and performing other tasks during these shifts. Plaintiff's damages calculations include "waiting time" on night and weekend shifts, because he could not use the time in between calls and jobs effectively for his own purpose. He claims, therefore, that he was "engaged to wait." Plaintiff has calculated that he worked an average of 75 hours per week and up to 120+ hours in certain weeks, including compensable waiting time. Defendants, however, have argued that Plaintiff worked only 55 hours per week and that his waiting time is not compensable. Although Plaintiff believes his position that he was "engaged to wait" is strong, Plaintiff acknowledges there is some litigation risk that his waiting time, in whole or in part, could be found non-compensable, which would reduce his damages.

Second, Plaintiff and Defendants disagree about the number of hours Plaintiff spent working jobs outside of his normal weekly schedule – both on his scheduled night and weekend shifts and other off-the-clock jobs. There is no documentation of the amount of time Plaintiff spent on jobs, fieldling calls, processing payments and doing other tasks on nights and weekends. If Defendants could succeed in proving Plaintiff worked only 55 hours per week, his damages would be reduced by more than 50%.

Finally, the Parties dispute the method of calculating damages. Plaintiff asserts he was paid a fixed weekly salary for a fixed 50-hour schedule, while Defendants claim the weekly salary was intended to cover all hours worked and that the fluctuating workweek should be used to calculate his damages. Although Plaintiff strongly believes the fluctuating workweek is not applicable, this defense presents an additional risk that, if successful, would significantly reduce his recovery.

The Honorable Steven J. Tiscione
April 1, 2021
Page 5

In light of these issues and defenses, Plaintiff perceives sufficient risk to justify the settlement amount, which further supports approval. *See Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07-cv-153 (ETB) 2007 U.S. Dist. LEXIS 66013, *3 (E.D.N.Y. Sept. 6, 2007) (approving settlement as reasonable in light of no documentation of the hours that plaintiff worked, the parties' disputes on the number hours plaintiff worked, and the "respective burdens the parties face with respect to their claims and defenses"); *Silverstein v. AllianceBernstein L.P.,* No. 09-cv-5904 (JPO) 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) (risk and uncertainty of "overcoming Defendants' likely fluctuating workweek argument" weighed in favor of approval).

      D.      Ability of Defendants to Withstand a Larger Judgment

Defendants represent that they lack the financial resources to pay the full settlement amount in a lump sum. The Parties agreed to installment payments for this reason. Defendants' ability to withstand a larger judgment is thus uncertain and further supports approval of the settlement.

      E.      Range of Reasonableness In Light of Best Possible Recovery and All Risks of Litigation.

Plaintiff has calculated his backpay damages at $125,000, which is the same as the settlement amount. While this does not include liquidated damages, interest, or statutory penalties for his wage notice and wage statement claims ($10,0000), the agreed upon settlement is reasonable in light of the potential risks and defenses. Specifically, Defendants have asserted that Plaintiff worked only 55 hours per week and that his damages should be calculated using the fluctuating workweek. If Defendants could succeed on both issues, Plaintiff's total backpay damages would be less than $20,000. Given the range of potential recovery and risks of litigation, a settlement value of full backpay for alleged unpaid overtime is reasonable and favors approval. *See Alvarez,* 2017 U.S. Dist. Lexis 206043, at *25 (approving FLSA settlement where plaintiff's recovery range varied significantly on the success of certain defenses).

IV.      The Agreement Is the Product of Arm's-Length Settlement Negotiations

The Settlement Agreement should also be approved because it is the product of an arms' length negotiation. The agreement was reached after the parties exchanged Phase I discovery and after extensive arms' length settlement negotiations between counsel who are experienced and knowledgeable in wage and hour litigation. The matter was ultimately resolved through the Court-Annexed mediation program at a mediation session with Raymond Nardo, a member of the EDNY Panel of Mediators. This process further favors approval of the settlement. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance); *Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 U.S. Dist. Lexis 110300, at *8 (E.D.N.Y. Aug. 6, 2011) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.").

The Honorable Steven J. Tiscione
April 1, 2021
Page 6

V.      The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*

The Settlement Agreement complies with Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*. 796 F.3d 199, 206 (2d Cir. 2015). In *Cheeks*, the Second Circuit questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. None of these issues are present here. Indeed, the Agreement does not contain a confidentiality provision and is publicly filed on the Court's CM/ECF system. The Agreement's non-disparagement provision comports with *Cheeks* as well, because it is mutual and permits Plaintiff to truthfully discuss the facts and claims in the lawsuit. *See Qiting Yang v. Matsuya Quality Japanese, Inc.,* No. 15-cv-1949 (JS)(ARL), 2017 U.S. Dist. Lexis 14823, *4 (E.D.N.Y. 2017) (explaining a non-disparagement provision, to comply with the FLSA, must permit the employee to discuss with others his or claims and litigation experience). The Agreement also does not contain a general release of claims; it covers only wage and hour claims such as the ones raised in this action. These terms favor approval of the settlement.

VI.     Plaintiff's Attorneys' Fees are Fair and Reasonable

Based on Plaintiff's counsel's qualifications and experience, the result obtained, the risk undertaken and the actual time spent on this matter, the amount of attorneys' fees provided to Plaintiff's counsel under the Settlement Agreement is fair and reasonable.

Plaintiff's counsel, Meredith Kaufman, is an experienced and well-respected employment attorney in New York City. She has been practicing employment law exclusively for her 12+ year legal career. After graduating from Columbia Law School in 2008, Ms. Kaufman started her career at Littler Mendelson P.C., one of the nation's leading labor and employment law firms. She spent over a decade as a management-side lawyer at Littler Mendelson P.C. and Baker McKenzie LLP and was a partner at both firms. In 2019, Ms. Kaufman opened her current practice Kaufman Law Firm PLLC, where she represents individuals and companies in a wide range of employment matters. Through these experiences, Ms. Kaufman gained significant experience in wage and hour disputes on both the plaintiff and defense sides. As a result of her extensive knowledge and experience, Ms. Kaufman was able to obtain a favorable pre-trial result for Plaintiff.

Subject to the Court's approval, Plaintiff's counsel will receive $41,666.67 (*i.e.,* one-third of the $125,000 settlement) in fees and expenses. This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *Santos v. E T & K Foods, Inc.*, No. 16-cv-7107 (DLI)(VMS), 2019 U.S. Dist. Lexis 31581, at *28 (E.D.N.Y. Feb. 26, 2019) (approving a one-third fee request and acknowledging "one-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp*, No. 13-cv-3234 (LB) 2013 U.S. Dist. Lexis 134207 (E.D.N.Y. Sep. 19, 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"). It remains reasonable for counsel to receive one-third of the fund even when the plaintiff is not receiving 100% of claimed damages. *Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request when plaintiff is receiving 50% of his claimed damages). Moreover, Plaintiff's counsel assumed meaningful financial risk when agreeing

The Honorable Steven J. Tiscione
April 1, 2021
Page 7

to represent Plaintiff on a contingency arrangement, which also weighs in favor of approving the contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

Furthermore, it is well-established that "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103,114 (1992)). Here, Plaintiff's counsel was able to obtain a favorable settlement of Plaintiff's claims prior to trial, which Plaintiff views as a successful result given the risk of not prevailing on some or all of his claims or recovering limited damages, as well as the current financial condition of Defendants.  Thus, given the degree of success obtained, the requested attorneys' fees and costs in the parties' settlement are fair and reasonable.

Finally, the amount of fees provided to Plaintiff's counsel is commensurate with the lodestar *i.e.,* the amount she would have earned hourly based on the number of hours expended and costs incurred in this matter since its inception.  This matter has been ongoing since December 2019.  In order to reach the agreed-upon resolution, Plaintiff's counsel expended over 96 hours of effort on the following tasks, among others: (i) fact-finding and research; (ii) several consultations, correspondence, and meetings with Plaintiff; (iii) performing damages calculations for Plaintiff; (iv) preparation of an extensive and detailed demand letter; (v) preparation of the complaint; (vi) settlement negotiations; (vii) exchanging Phase I discovery; (viii) preparation of mediation statement and attending mediation; (ix) reviewing and revising the settlement agreement; and (x) preparing this motion for settlement approval.

Although this was a contingency case, Plaintiff's counsel recorded all time spent on this matter.  According to counsel's time records, which are attached as Exhibit B, she has spent more than 96 hours prosecuting this action to date and $700 in filing fees and mediator fees. Applying a rate of reasonable $450,[1] which is less than her standard hourly rate, attorneys' fees would have totaled approximately $43,380, plus $700 in expenses, for a total of $44,080 had this matter had been billed.  The one-third contingency fee of $41,666.67 is $2,413.33 less than the lodestar and therefore reasonable.

Accordingly, in light of the qualifications of Plaintiff's counsel, the nature and scope of the issues herein, the negotiations necessary to reach the agreed-upon settlement, and the result obtained, Plaintiff's requested counsel fees are fair, reasonable, and within the range of fees typically

---

[1] The requested rate of $450 per hour for this matter is reasonable given Plaintiff's counsel's qualifications and experience and is comparable to rates awarded rates to other employment attorneys of similar or lesser experience in this District. *See, e.g., Hall,* 2016 WL 1555128 at *12 (awarding partner with 12 years' experience litigating FLSA and NYLL wage and hour lawsuits hourly rate of $450); *Bodon v. Domino's Pizza, LLC*, 2015 WL 3889577, *8 (E.D.N.Y. June 4, 2015), report and recommendation adopted, 2015 WL 3902405 (E.D.N.Y. June 24, 2015) ("[P]artners in wage and hour cases are generally entitled to recover $300 to $450 per hour"); *Toussie v. County of Suffolk*, 2011 WL 2173870, *2 (E.D.N.Y. May 31, 2011) (approving rate of $450 per hour for a partner with extensive experience).  Ms. Kaufman regularly charges clients $650 per hour, which underscores the reasonableness of the requested $450 rate.

The Honorable Steven J. Tiscione
April 1, 2021
Page 8

awarded in cases in this Circuit. *See Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 60 (E.D.N.Y. 2010); *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

For the foregoing reasons, the parties jointly and respectfully request that the Court issue an order approving the proposed settlement in its entirety.

Respectfully submitted,

Meredith L. Kaufman
*Counsel for Plaintiff*


cc: Jasmine Patel, Esq., Counsel for Defendants (via ECF)